35 C.C.P.A.(Patents)

## CHRISTIAN v. MULLER.

## MULLER v. CHRISTIAN.

### Patent Appeal Nos. 5345, 5346.

Court of Customs and Patent Appeals.
Jan. 6, 1948.

Clarence B. Des Jardins, of Cincinnati, Ohio (George Ramsey, of New York City, of counsel), for Christian.

Fidler & Crouse, of Chicago, Ill. (Charles M. Thomas, of Washington, D. C., Raymond E. Fidler and Carl W. Crouse, both of Chicago, Ill., of counsel), for Muller.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

These are cross appeals in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to the party Christian with respect to counts 1, 2 and 3 and to the party Muller with respect to counts 4, 5 and 6.

The interference involves an application for a patent, serial number 653,838, filed January 27, 1933 by the senior party Christian and assigned to the National Cash Register Company and a patent of the junior party Muller, number 2,288,916, dated July 7, 1942 on an application filed February 6, 1939 and said to be a continuation-in-part of an application filed February 17, 1936. The Burroughs Adding Machine Company is the assignee of the Muller patent.

The interference generally relates to calculating machines, particularly with reference to the carriage or paper holding equipment on a front-feed multiple-columnar tabulating machine.

The machines of the parties are designed to operate in sequence on a great number of successive ledger sheets in the usual columnar fashion and simultaneously to make a record of the entries in tabulated form. The machines operate with a minimum control by the operator and to this end the front-feed mechanism is power

operated and controlled in such fashion and that when the carriage carrying the plates, over which the paper extends, is moved to a desired position the depression of a certain key causes the plates to move from closed-feed printing position to an open front-feed position.

Counts 1 and 4 are illustrative of the involved subject matter and read as follows:

"1. A front-feed machine of the class described having front-feed means for receiving and holding a work sheet in front-fed position, said front-feed means being movable from closed to open-throat condition and vice versa, columnar-printing control means for controlling the columnar printing on said work sheet, *total-taking control means, and power means under the joint control of said total-taking control means and said columnar-printing control means* acting automatically to move said front-feed means to open-throat condition during a total-taking cycle of operation and after the total has been taken and without requiring a change in the columnar setting of said columnar-printing control means." (Italics ours.)

"4. In a front-feed machine of the class described adapted to be driven through cycles of operation, the combination of front-feed means for receiving and holding a work sheet in front-fed position, said front-feed means being movable from a closed to an open-throat condition and vice versa, an electric motor, *direct independent driving connections* between said motor and said front-feed means, and means controlling said driving connections operable to condition said driving connections to cause said front-feed means to be moved to open-throat condition by said motor." (Italics ours.)

The party Christian copied claims from the Müller patent in order to provoke an interference. After various proceedings, which are of no importance here, the board awarded priority to the parties as aforesaid on the grounds that the party Christian could make counts 1, 2 and 3, and that he could not make counts 4, 5 and 6.

The Christian application discloses a National Cash Register Company calculating machine known as the "Ellis" type and the Müller patent discloses a Burroughs calculating machine of the "Moon-Hopkins" type.

The Christian machine comprises a keyboard on which are carried the usual amount keys and control and function keys, including a number of totalizer keys. There is also an overdraft key and an overdraft indicator which may be seen by the operator and which indicates at all times whether the balance is in a plus or minus amount. Should the indicator show a minus balance, the overdraft key may be depressed by the operator thereby causing an overdraft printing in distinctive color to appear on the record sheet. When the key is depressed, certain mechanism operates through three separate and distinct cycles, in the first of which a totalizing operation occurs causing the complement of the overdraft to be temporarily transferred to a different mechanism thereby clearing the totalizer. The second cycle then occurs in which there is a subtraction operation and in the subsequent third cycle a final balance is printed on the record sheet. When the printing has been done the mechanism moves to rock the platen out of printing position and also moves the pressure rolls so as to provide an open throat for the front feeding of another sheet. After a fresh sheet has been inserted, the operator may put into motion the proper control to close the throat, throwing the platen back into printing position.

It may be noted that during the first two cycles, while the overdraft key is depressed, the printing mechanism does not operate. The first and third cycles are totalizing operations and the second cycle is a subtracting operation. It will be seen that depression of the overdraft key results in the printing of an overdraft balance, and subsequent to such printing the throat of the machine opens and the platen moves to a front feed position.

It is the contention of the party Müller that the Christian overdraft key is not, as was held by the board, a "total-taking control means" as called for in counts 1, 2 and 3. The depression of the overdraft key, for the reason that it controls the first cycle which prints a total and the

third cycle in which the printing of the balance is done, may properly be designated as a total-taking control means even though the second cycle is a subtracting operation. The carriage control functions while the key is depressed, and necessarily there must, in our opinion, be a joint control of the total-taking control means and the columnar printing control means of the Christian machine. Even though the final balance may be minus, the fact that it is a debit rather than a credit does not, in our opinion, change the nature of the control. Counts 1, 2 and 3 define broadly a "total-taking control means," and we agree with the statement of the board that "The term is not ambiguous and while it originates in a patent we cannot reasonably read limitations into it."

While it may be true, as contended by the party Muller, that the end carriage control of the Christian apparatus will function after any operation as long as the carriage is in the balance columnar position, there is no limitation in counts 1, 2 and 3 which limits such control to any particular operation.

Since it is clear to us that the overdraft key of the Christian machine when broadly considered is a total-controlling means, we are of opinion that the contention of the party Muller, that the final operation is not under the joint control of the totalizer and columnar printing-control means, as heretofore noted is not well taken. It appears to us that because the third cycle of the overdraft operation is controlled by Christian's overdraft key, and because the throat opening means is power operated and controlled within that cycle, the overdraft key should properly be held to control the power means for opening the front feed means.

Counts 4, 5 and 6 call for "direct independent driving" means connecting the driving motor with the front feed mechanism. In the Muller apparatus the machine power is transmitted from the driving motor through the motor shaft, the clutch control, and suitable gearing and linkage to the means which controls the platen feed machanism. There is no inclusion in that connection of any other functional mechanism and the connection will not of itself cause the machine to cycle.

In the Christian machine the connecting mechanism between the driving motor and the platen-rocking device includes the printer shaft. It is contended by the party Muller that the driving connections in the Christian machine between the motor and the front feed means are neither independent nor direct as defined in counts 4, 5 and 6.

With respect to those counts, the examiner held that they may be construed to read upon the Christian disclosure as having "direct independent driving connections." In the opinion of the examiner the word "independent" is not of necessity confined to the structure of the Muller device, but could well be disclosed in a structure "where the drive is independent part of the way." For that reason the Primary Examiner held that the party Christian could make counts 4, 5 and 6.

The board did not agree with the reasoning or holding of the examiner on those counts and in this connection stated as follows:

"We do not concur in this view as to the significance of the term 'independent' in a situation such as that at bar. In particular, a structure in which 'the drive is independent part of the way,' or in other words, where it has some dependency cannot, it seems to us, at the same time be held to be independent. The two positions are incompatible. The counts at issue are, except for immaterial limitations, claims from the Muller patent and an examination of the patent is believed to show clearly the meaning in which the term is used. In the patent, it is used in the sense of distinct or separate. The Christian interlinking mechanism, having within itself as one of the necessary power conveying elements, the printer shaft 143, cannot be considered independent of the printer mechanism.

"As to the term 'direct' occuring in the three counts we believe that Christian is clearly entitled to this expression, at least to the same extent as Muller. In neither machine is the connection between motor and feed mechanism strictly 'direct,' since

it is through devious intermediate linkages, but to the extent that connecting mechanism of Muller with its levers, gears, etc., is direct, we feel that the mechanism of Christian is no less so.

"In view of the above analysis, it is our opinion that the party Christian cannot make counts 4, 5 and 6 because his interconnecting means is not separate and distinct or 'independent' from all other functional parts of the machine."

We do not think it would serve any useful purpose, in view of our agreement with the reasoning of the board with respect to the significance attaching to the term "independent," to reiterate its reasoning in other language and thus unnecessarily lengthen this opinion. It suffices to say that we agree with the reasoning of the board as to claims 4, 5 and 6, and find no error in its holding that the party Christian is not entitled to make those counts and that priority of the invention of the subject matter thereof was properly awarded to the party Muller.

For the reasons set forth herein, the decision of the Board of Interference Examiners is affirmed.

Affirmed.